**FLEMING, Administrator of Wage and Hour Division, United States Department of Labor, v. KNOX et al.**

No. 86.

District Court, S. D. Georgia, Augusta Division.

Dec. 22, 1941.

George A. Downing, Regional Atty. for Wage and Hour Division, and William Lowe, of Atlanta, Ga., for Fleming, Administrator.

Lee, Congdon & Fulcher, of Augusta, Ga., for Knox, etc.

LOVETT, District Judge.

This case comes before me on an application to adjudge the defendants in contempt of court for failure to comply with

a decree of this court entered on December 23, 1940. Among other things the decree provided:

"Further Ordered, Adjudged and Decreed that the stipulation made this day between Philip B. Fleming, Administrator of the Wage and Hour Division, United States Department of Labor, and Peter Seymour Knox, Sr., Mrs. Gertrude Austin Knox, Wyckliffe Austin Knox, Mrs. Byrnece Austin Knox, Peter Seymour Knox, Jr., Mrs. Mary Aikin Knox, Robert Edward Knox and William Lawrence Manning Knox, co-partners, doing business as Knox Brothers Lumber Company, and filed herein be and it hereby is incorporated in and made a part of this judgment, and that the said defendants do and perform each and every act and thing set forth in the said stipulation."

The stipulation contains this language:

"The defendants, Peter Seymour Knox, Sr., Mrs. Gertrude Austin Knox, Wyckliffe Austin Knox, Mrs. Byrnece Austin Knox, Peter Seymour Knox, Jr., Mrs. Mary Aiken Knox, Robert Edward Knox, and William Lawrence Manning Knox, co-partners, doing business as Knox Brothers Lumber Company, will pay to each of their employees employed in or about their plants at Thomson, McDuffie County, Georgia, and Greensboro, Greene County, Georgia, since October 24, 1938, a sum of money equal to the difference between the amounts of wages actually paid each such employee for his employment during the said period and the amounts each such employee should have been paid had he been compensated for his said employment at the minimum and overtime rates of pay as required by Sections 6 and 7 of the Fair Labor Standards Act of 1938.

"Defendants Peter Seymour Knox, Sr., Mrs. Gertrude Austin Knox, Wyckliffe Austin Knox, Mrs. Byrnece Austin Knox, Peter Seymour Knox, Jr., Mrs. Mary Aiken Knox, Robert Edward Knox, and William Lawrence Manning Knox, co-partners, doing business as Knox Brothers Lumber Company, will, within 45 days from the date hereof, compute the sums to be paid to their employees pursuant to the provisions of this paragraph and submit a schedule of such sums to plaintiff or his authorized agent for checking, revision and approval. Upon such approval by the plaintiff or his authorized representative, and not less than 60 days from the date hereof, the said defendants will make payment of such sums in accordance with such schedule."

It appears from the decree and stipulation that the defendants made a computation showing the amounts they claimed should be paid to these employees, but the Administrator refused to approve the computation, and in lieu thereof has prepared his own computation showing the amounts he claims to be owing. The issue before the court, therefore, revolves around these two computations, as to which is accurate, if either, and as to whether or not as a consequence of the defendants' failure to properly compute and pay the so-called back wages they now should be punished for contempt.

The evidence develops that there are three classifications of employees that should be separately treated, because the issues with respect to them are somewhat different.

1. There is one group of employees, more fully shown by the several computations, who interchangeably during a given work week engaged in what is referred to as the retail end of the business, meaning thereby a division or department of the defendants' lumber business engaged exclusively in the manufacture, drying or processing of lumber for sale within the state and locally, and also in another department of the business where the lumber manufactured or processed was produced for commerce and was later actually shipped in commerce among the states within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. This is sometimes referred to as a "split" work week. It appears from the evidence that the employees so interchangeably worked were chiefly stackers of green lumber received in the yard by the defendants for future processing or treatment, through processing or seasoning the lumber or putting it in the dry kiln. On the receipt of lumber so received on the yard it could not be segregated so as to show that portion which would move in commerce among the states and that portion to be sold locally, as no one then knew its final destination; and the defendants paid these stackers while engaged in stacking that kind of lumber the wages provided by the Act; but these employees so engaged in stacking lumber also worked in a given work week shown by the computation at a dry kiln where lumber intended to be sold, and actually sold, locally and

not beyond the limits of the state was being dried. For that service they were paid a lesser wage and for overtime at the regular lower lesser rate of pay. The question is, whether or not the wages of these employees while so engaged at the dry kiln in handling lumber that was intended for local sale and use and not to be removed beyond the limits of the state should be paid at the rates provided by the Fair Labor Standards Act of 1938.

■ In my judgment they should be so paid. To hold otherwise would defeat the purposes underlying the enactment of this legislation, and would permit an employer subject to the Act to work an employee for the full maximum hours allowed by Section 7 of the Act, and pay him the minimum wages provided by the Act, and then immediately upon the expiration of the maximum hours and within the same work week put him back to work in some local portion of the business, regarded as departmentalized, isolated and removed from the interstate portion, and pay him any sum of money during that latter portion of the work week which he could induce the employee to accept, however small. I think one of the chief objects of the Act would be defeated thereby, namely, the working of employees as a class beyond the maximum number of hours fixed by the law for a work week on the basic hourly rate of pay indifferent to the requirement for compensation in excess of those hours at a rate not less than one and one half times the regular rate, or conceivably for a whole work week at even a lower rate than fixed by the law as the minimum wage, thereby encouraging instead of discouraging violation of the section of the Act fixing hours for a normal work week. If the employer is subject to the Act, it seems to me that he should be careful to see that his interstate and intrastate employees during any work week are not interchanged, but are kept entirely separate and distinct each from the other, where the business has been so departmentalized that the local business may be regarded as intrastate and the wholesale or manufacturing department as interstate business.

2. The second question relates to two employees, Mr. McGiboney and Mr. Self, the former being a bookkeeper at the Greensboro, Georgia, plant of the defendants, and the latter a lumber checker at the same plant. It appears from the evidence that these two employees worked at various times in the commissary located on the plant site of the defendants, not owned or operated by them, but operated by the same person who is the manager of the Greensboro plant, though operated by him for his own account. The urge of the plaintiff is that these two employees should be compensated by defendants for the time worked at the commissary, though admittedly the defendants were not their employers at the time they were working there, because, it is said, these employees should be looked upon as having been jointly employed by the defendants and the operator of the commissary, largely because he happens to be the local manager of the defendants' plant.

■ I am unable to get this point of view. It seems to me quite immaterial that the man who was the operator of the commissary was the local manager of the plant. He might as well have been a stranger to the defendants and in no manner connected with them. It is true the evidence discloses that at various periods of time the defendants would compensate the two employees for the time worked at the commissary and would obtain reimbursement from the operator of the commissary for the amounts paid. That does not seem to have been, so far as I am able to discover from the evidence, in pursuance of any agreement with the employees to that effect, but apparently was for the convenience of the employers only. I think the work in the commissary by the employees remains several and not joint, and I therefore hold as to Mr. McGiboney and Mr. Self that the time in the plaintiff's computation for services rendered at the commissary should be excluded.

■ 3. The final group consists of defendants' office employees (bookkeepers), two in number, and a lumber checker at the Thomson, Georgia, plant of the defendants. Since October 24, 1938, and prior to that time, these employees were paid weekly wages, without regard to hours worked, and no provision has ever been made for payment of time and half time for overtime to them. These employees admittedly are covered by the Act. They were in no sense local employees, but worked in connection with the production of goods for commerce or goods actually moving in commerce. As I understand the Fair Labor Standards Act of 1938, since its effective date a

weekly wage, with certain exceptions not here material, is no longer permissible. The unit of measurement is the hour, and the rates of minimum hourly pay are fixed by the Act. The maximum hours allowed within the work week at the minimum rate of pay and overtime thereafter at the statutory higher rate are also fixed, and the total hours worked in a work week are to be considered for the purpose of determining how the overtime shall be reckoned. This is not a case where the employer and employee, theretofore paid on a weekly or monthly basis, after the effective date of the Act get together, and in a bona fide effort to readjust the rate to the hourly basis from a monthly or weekly rate reduce the rate below what it would have been if reckoned previously by the hour, and the new hourly rate is still above the minimum guaranteed by the Act. Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207; Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42, decided December 9, 1941. It is clear that the employer and employee simply continued the arrangement that existed before the Act. In my opinion that is not permissible for employees of this kind.

The plaintiff does not ask for an undue penalty to be imposed upon the defendants for their failure in this respect; but insists that during the period in controversy the employer shall take the number of hours actually worked in the several work weeks and divide them into the actual weekly compensation received by the employees, and thus arrive at the basic hourly rate, and when such basic rate is below the minimum adopt the minimum fixed by the Act; and thereupon credit the employer for work beyond the maximum hours during the work week the amount paid on the hourly basis. By this method the employer is not unduly penalized. While he is required to pay for overtime compensation at a rate not less than one and one half times the basic hourly rate, he gets credit for the amount paid for overtime at that basic rate. The plaintiff does not contend here that the basic hourly rate be determined by dividing the weekly compensation paid by the maximum hours fixed by the Act.

I shall have to require that such payments be made according to that computation, and that hereafter the wages of such employees shall be computed on an hourly basis and a true and correct record kept according to the regulations of the Administrator for the hours of work each day worked by such employees.

I am not inclined at this time to enter an order finding the defendants in contempt of the court and sentencing them to punishment for disobedience of the prior order of the court. Perhaps I could not until the amount owing is judicially ascertained. In lieu of that I will direct that the defendants make restitution of the back wages in accordance with this opinion within sixty days from the filing of this opinion, and upon failure so to do, on motion of counsel for the plaintiff, the case may be considered further in determining the punishment which shall be administered.

I will ask counsel to confer, in the light of this opinion, in the effort to reach an amount in exact dollars and cents they find to be owing, and when done appropriate findings of fact and conclusions of law, not inconsistent with this opinion, will be made.