## GUESS et al. v. MONTAGUE.
### No. 5089.

Circuit Court of Appeals, Fourth Circuit.
Sept. 16, 1943.

W. K. Charles, of Greenwood, S. C. (L. D. Jennings, of Sumter, S. C., on the brief), for appellants.

John D. Lee, of Sumter, S. C. (Lee & Moise, of Sumter, S. C., on the brief), for appellee.

Frederick U. Reel, Atty., U. S. Department of Labor, of Washington, D. C. (Douglas B. Maggs, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., George A. Downing, Regional Atty., of Atlanta, Ga., and Morton Liftin, Atty., U. S. Department of Labor, of Washington, D. C., on the brief), for Administrator of Wage and Hour Division, U. S. Department of Labor, as amicus curiae.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

502

**PARKER, Circuit Judge.**

This is an appeal from a judgment for defendant in an action instituted to recover unpaid minimum wages, overtime compensation, etc., under section 16(b) of the Fair Labor Standards Act, 52 Stat. 1069, 29 U.S. C.A. § 216(b). The trial court directed a verdict for the defendant on the ground that he was operating a service establishment the greater part of whose selling or servicing was in intrastate commerce within the meaning of section 13(a)(2) of the act, 29 U.S.C.A. § 213(a)(2), and on the further ground that the plaintiffs had been paid in good faith the minimum wages due them before institution of suit and before any controversy arose as to their rights under the act.

Defendant operated a machinery repair shop, in which he repaired machinery for his customers, sold repair parts and rebuilt and sold secondhand machinery which he had purchased. A substantial part of the business done was in interstate commerce and it does not appear that any records were kept separating the labor performed in connection with interstate transactions from those purely intrastate or that it would have been feasible to make such separation. The nature of the business and of the work done by plaintiffs therein is correctly set forth in the brief of the Administrator of the Wage and Hour Division, filed amicus curiae, from which we quote as follows:

"Appellee operated a machine shop under the supervision of a mechanical engineer in which he employed a foreman, about 20 persons as machinists and laborers, and an apprentice. Appellee testified that the major part of the business for 25 years was the rebuilding of second-hand machinery. According to the evidence the employees in the machine shop did machine work of any kind. This included work on planing mill machinery, saw mill machinery, farm machinery, cotton gin machinery, boilers, gears, steam engines, water pumps, steam, acetylene, and wood work machinery.

"When the machinery was delivered to appellee's plant, the laborers unloaded it in the yard which apparently adjoins the machine shop. 'The part of it that we think is worth repairing we separate from what we consider not worth repairing. That is scrap.' Thus the machinery would be partially disassembled or dismantled. The principal work of the laborers was in the yard on the second-hand equipment and included separating the scrap from the part that could be salvaged and cutting the scrap to prepare it for shipment. The scrap produced in this manner by the laborers reached substantial proportions, totaling more than 300,000 pounds in the 7 month period prior to the trial. The scrap was apparently accumulated in carload lots for shipment to industrial purchasers.

"The work in the machine shop included the repair of machinery belonging to others as well as work on the second-hand machinery acquired by appellee. The rebuilding of the machinery preparatory to its resale is accomplished in the 'machine shop' under the supervision of a mechanical engineer. Skilled machinists operate the complicated machinery necessary to the rebuilding; the appellant laborers, although they would lift the goods into the lathes and take them out and help the machinists at whatever there was to be done were 'instructed * * * to keep their hands off the machines'. According to one of the machinists, 'in the operation of the lathe machine * * * we had gears and parts to machine-up and put on new parts by pulleys and sprockets to pull the gears and sawed and bolted them.'

"The equipment thus 'manufactured, worked on, or produced at the machine shop' by its very nature had principally industrial uses. The description of the machinery in the record demonstrates its use for industrial purposes. The testimony of one witness indicates that the machinery was delivered 'to the furniture plant and. different places like that'. The record further indicates that among appellee's customers were lumber companies, a brick and tile company, manufacturing companies, furniture companies, cotton mills, and machine companies."

█ We do not think that a machine shop of the sort operated by defendant can be held to be a service establishment within the meaning of the exemption contained in. section 13(a)(2) of the statute. It is to be noted that the language of the exemption is, "retail or service establishment the greater part of whose selling or servicing is in intrastate commerce", and that the purpose of the exemption, as shown by the history of the act, was to make certain that retailers located near and making occasional sales across state lines would not be covered by the provisions of the act. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 337, 87 L.Ed. ——; Walling v. American Stores Co., 3 Cir., 133 F.2d 840,.

843. As said in the case last cited: "Section 13(a)(2) was not contained in the original drafts of the Act. The only provision prior to the inclusion of § 13(a)(2) which dealt with retailing was § 13(a)(1) which exempted any employee employed 'in a local retailing capacity'. This failed to satisfy some of the members of the House who seriously doubted that it covered intrastate 'retailers' situated near state lines and making occasional interstate sales. What the Congressmen meant by the use of that term 'retailer' is discernible from their questions and comments. Representative Dempsey, prior to the adoption of the amendment, asked whether the bill could 'in any way affect such business as that of the local groceryman, druggist, clothing store, meat dealer—any merchant, in fact—laundry, hospital, hotel, or even transportation companies operating solely within a State?' Representative Massingale offered an amendment and stated it was 'for the purpose of protecting what you would call the corner grocery store man or the filling-station man'. The House voted down all amendments to achieve this purpose upon the insistence of Representative Norton that the Bill amply covered the problem until Representative Cellar offered his amendment. It exempted 'any retail industry, the greater part of whose sales is in intrastate commerce'. This, he argued indicated 'in the clearest way that retailing is exempted'. If it were accepted, 'then retail dry goods, retail butchering, grocers, retail clothing stores, department stores will all be exempt.' The amendment was accepted."

In Bracey v. Luray, 4 Cir., 138 F.2d 8, this day decided, we hold that a retail establishment within the meaning of the exemption is one which sells in small quantities to the ultimate consumer. On the principle noscitur a sociis, the "service" establishment contemplated by the exemption must be of the same sort as the "retail" establishment therein referred to, i. e. it must be one "selling services to consumers", and this is the clear intimation of the Supreme Court. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 526, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638. As suggested by the Circuit Court of Appeals of the Second Circuit in Fleming v. Arsenal Building Corporation, 2 Cir., 125 F.2d 278, 280, we think that the exemption "should be limited to those who serve consumers directly, like tailors, or garages, or laundries". Other illustrations of service establishments within the meaning of the statute have been given as "barber shops, beauty parlors, shoe-shining parlors, clothes pressing clubs, laundries, automobile repair shops, or the like." Wood v. Central Sand & Gravel Co., D.C., 33 F. Supp. 40, 47; Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, 572.

It is clear, we think, that the business of defendant cannot be brought within the exemption. While the repair of machinery for customers, if there were nothing more, might fall within the exemption, the very substantial business of conditioning and selling scrap would certainly not come within it. Bracey v. Luray, supra. Nor would the work done in rebuilding and reconditioning secondhand machinery for sale by defendant fall within the exemption, which does not extend to manufacturing or processing goods for sale. Collins v. Kidd Dairy & Ice Co., 5 Cir., 132 F.2d 79; Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236; Samuels v. Houston, D. C., 46 F.Supp. 364. Nor, in such cases, is the employer's business any the less within the coverage of the act because some part of his activities may include intrastate retail sales or servicing. Collins v. Kidd Dairy Co. supra; Cullum v. Stevens, D.C., 46 F.Supp. 73; Samuels v. Houston, supra. Cf. Davis v. Goodman Lumber Co., 4 Cir., 133 F.2d 52.

As to the second ground upon which the court below directed the verdict, it appears that defendant paid to the plaintiffs Guess, Rodrigue, Weathersbee and Jones, before institution of suit and before any controversy had arisen, the full amount due them as minimum wages. Defendant was doubtful as to whether the act applied to his business, but upon being advised that it did, he called in these plaintiffs, explained the situation to them and tendered them checks for the full amount of the balance due them as wages under the minimum wage law. They accepted these payments in full settlement, without reservation of any rights, and executed receipts in full releasing defendant from any and all other claims and demands which might have accrued to them under the provisions of the act.

The same procedure was followed in the case of one John Rodgers, an infant apprentice. The wages paid him, however, were the wages of an apprentice, and no permit to employ and pay him as an apprentice had been obtained pursuant to the provisions of the act, 29 U.S.C.A. § 214, and

applicable regulations, and consequently the amount paid him was not the balance due as minimum wages under the act.

As to the other plaintiffs, they were common laborers employed in and about the plant. They executed receipts in full upon the payment to them of certain sums estimated by defendant to represent the balance of minimum wages applicable to that part of their work done in interstate commerce. There is evidence, however, to the effect that all of their work was done about the shop, except for occasional work done in driving trucks to the farms of defendant, which does not seem of sufficient extent to require any division from their ordinary employment for the purpose of applying the act; and taking the evidence in the light most favorable to these plaintiffs, as must be done on motion for a directed verdict, it was sufficient to sustain a finding that the balance of wages due them under the act was greater than the amount paid.

The fact that a part of the work done in the shop may not have related to the interstate activities of defendant or may have been rendered in services within the exemption, does not, under the circumstances here appearing, justify the payment of less wages than required by the act. The employer was unquestionably subject to the provisions of the act with respect to a part of the activities of the shop; and there was no such separation of business subject to the act from business not subject to it as was shown in Davis v. Goodman Lumber Co., supra, where the manufacturing business of the Lumber Company in which the plaintiffs were engaged was entirely separate and distinct from its retail lumber business. It is a fair inference from the evidence that plaintiffs here worked on interstate as well as intrastate business; that the two classes of business were commingled in defendant's operations; and that defendant did not attempt to distinguish between the two in the payment of wages. Under such circumstances, we think that plaintiffs have made a prima facie showing entitling them to the protection of the act. Cf. Fleming v. Knox, D.C., 42 F.Supp. 948; Holland v. Amoskeag Mach. Co., D.C., 44 F.Supp. 884, 887; Walling v. Mutual Wholesale Food & Supply Co., D.C., 46 F.Supp. 939, 950. In the further hearing of the case, it may be possible for defendant to show that certain of plaintiffs did not render any service in connection with its interstate business, or that during certain work weeks no such services were rendered by them; but as these are matters peculiarly within the knowledge of defendant, and as persons in position of plaintiffs could not be expected to furnish proof with regard thereto, it is not unreasonable to place the burden of producing it upon defendant where plaintiffs have made a prima facie case by showing the general nature of defendant's business.

The fact that defendant believed that he was not subject to the provisions of the act, or that in making settlement with these plaintiffs he paid them in good faith the amount that he estimated that he owed them under his interpretation of it, is no defense. No agreement on the part of employees to accept less than the minimum wage prescribed by statute is binding upon them. Overnight Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115; Carleton Screw Products Co. v. Fleming, 8 Cir., 126 F.2d 537; Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622; and see United States v. Morley Const. Co., 2 Cir., 98 F.2d 781, 788. In so far as Rodgers and the laborers last mentioned are concerned, therefore, there was error in directing a verdict against them.

Guess, Rodrigue, Weathersbee and Jones, however, stand in a different situation. They have admittedly been paid the entire balance due them as minimum wages or overtime compensation, and they have accepted it as full settlement of all claims under the act. If they had not accepted it as full settlement, their claim for liquidated damages would not be barred, for recovery of liquidated damages is not barred by merely accepting the balance due on minimum wages. Seneca Coal & Coke Co. v. Lofton, 10 Cir., 136 F.2d 359, decided May 27, 1943; Abroe v. Lindsay Bros. Co., 211 Minn. 136, 300 N.W. 457; Rigopoulos v. Kervan, D.C., 47 F.Supp. 576; Philpot v. Standard Oil Co., D.C.N.D.Ohio, 53 F. Supp. 833.

As we have seen, the policy of the law forbids settlement for less than the minimum wage which the statute prescribes, but there is nothing in the statute or in public policy which forbids settlement of the claim for liquidated damages at any figure that the parties may agree on. The mere fact that the cause of action for liquidated damages is created by statute and that the courts have no discretion but to enforce it, does not mean that it cannot be settled by

agreement, just as can a claim for triple damages under the antitrust or patent statutes. The reason that a settlement for wages at less than the minimum wage is not binding is that such a settlement contravenes express provisions of the statute. The language of the statute with respect to wages is "Every employer shall pay". 29 U.S.C.A. § 206. With respect to hours, it is "No employer shall * * * employ * * * for a workweek longer" etc. 29 U.S. C.A. § 207. And for violation of these provisions criminal penalties are provided. 29 U.S.C.A. § 215(a) (2). The provision with respect to liquidated damages, however, is merely that the employer shall be "liable" for unpaid minimum wages and unpaid overtime compensation, and "in an additional equal amount as liquidated damages". 29 U.S.C.A. § 216. No criminal penalty is provided for failure to pay such damages. The creation of a liability does not prevent settlement by agreement of parties. Only where the law imposes a positive duty to pay should a settlement, which is ordinarily favored by the law, be held to be prohibited; and this duty is created by the statute here only with respect to minimum wages and overtime compensation, not with respect to the liability for liquidated damages.

It is suggested that the release of their claim for liquidated damages was without consideration (cf. Rigopoulos v. Kervan, supra), but there was ample consideration in the payment of the full balance due as minimum wages and overtime compensation. These plaintiffs had two claims, one for the balance of the minimum wages and overtime compensation fixed by law, the other for liquidated damages in a like amount. There was doubt in the mind of the defendant as to his liability for either and plaintiffs were not then even claiming that he was liable for either. Certainly the payment of the one, under such circumstances, was sufficient consideration for the release of the other. Chicago, Milwaukee & St. Paul R. Co. v. Clark, 178 U.S. 353, 20 S.Ct. 924, 44 L.Ed. 1099; Bofinger v. Tuyes, 120 U.S. 198, 7 S.Ct. 529, 30 L.Ed. 649; 1 Am.Jur. 249, 251; 1 C.J.S., Accord and Satisfaction, § 32, p. 512.

What we have in the case of each of the plaintiffs is a contract of accord and satisfaction. In cases where the minimum wages and overtime compensation required by the statute have been paid, the contract is valid. Where they have not been paid,

it is void and plaintiffs may recover not only the balance of minimum wages found to be due them, after deduction of the amount paid on the settlement, but also the original amount of the liquidated damages to which they were entitled. The question arises whether the contract in the latter case is not valid as a release of the claim for liquidated damages although not as to the claim for unpaid minimum wages and overtime compensation. The answer is that the settlement was a single transaction and was void because in contravention of the statute. To give validity even to that portion of it relating to the liability for damages would be to give effect to what it was the purpose of the law to forbid, viz., payment of inadequate wages to employees. Where settlement is made for less than the law requires to be paid, so that the employee must go into court to recover what the law intended that he should have, he should be allowed to recover the damages which the law provides, notwithstanding any release that he may have given; for one of the purposes of creating the liability for damages was to adequately compensate the employee who should find it necessary to go into court to protect his rights.

The result of our holding is that where an employer who has paid less than the minimum wages and overtime compensation prescribed by the act makes settlement with the employee for the full amount due thereunder and the employee accepts same in full discharge and satisfaction of all claims against the employer, there is an end of liability, and the employer may not be harassed by further litigation. The condition, however, is that the employer pay the full amount of the balance of minimum wages and overtime compensation due. If he pays less than this, the settlement constitutes no bar. This rule, we think, is in strict accord with the provisions of the act and of the public policy upon which it is based. It will encourage employers to settle claims for unpaid minimum wages and overtime compensation, with assurance that when a full and fair settlement is made there will be no danger of further liability. On the other hand, it will preserve the threat of recovery of liquidated damages if full payment of minimum wages and overtime compensation, as required by the act, is not made. In other words, it will encourage compliance with the law and minimize the opportunity to take unjust advantage of its provisions.

506

It follows that as to the plaintiffs Guess, Rodrigue, Weathersbee and Jones, the judgment appealed from should be affirmed. As to the other plaintiffs, it should be reversed and the cause remanded for further proceedings not inconsistent herewith. The costs on appeal will be divided.

Affirmed in part, reversed in part and remanded for further proceedings.