**WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor, v. ROLAND ELECTRICAL CO.**

No. 5266.

Circuit Court of Appeals, Fourth Circuit.

Jan. 3, 1945.

George M. Szabad, Atty., U. S. Department of Labor, of Washington, D. C. (Douglas B. Maggs, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., Lemuel H. Davis, Regional Atty., of Richmond, Va., and Joseph I. Nachman, Atty., U. S. Department of Labor, of Staunton, Va., on the brief), for appellant.

Raphael Walter, of Baltimore, Md. (Nyburg, Goldman & Walter, of Baltimore, Md., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and HARRY E. WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal from an order denying an injunction to the Administrator of the Wage and Hour Division in a suit brought against the Roland Electrical Company under section 17 of the Fair Labor Standards Act, 52 Stat. 1069, 29 U.S.C.A. § 217. There are two questions in the case: (1) Whether the company's employees are engaged in the production of goods for commerce within the meaning of section 3(j) of the Act, 29 U.S.C.A. § 203(j); and (2) whether the company is a "retail or service establishment the greater part of whose selling or servicing is in intrastate commerce", within the meaning of sec. 13(a) (2) of the Act, 29 U.S.C.A. § 213(a) (2). The District Judge while intimating doubt on the first of these questions answered the second in the affirmative and denied the injunction on that ground. D.C., 54 F.Supp. 733.

The pertinent facts are succinctly set forth by the Administrator in his brief in a statement which the company, referred to there as appellee, accepts in its brief as correct. That statement is as follows:

"Virtually all of the relevant facts have been stipulated. Appellee holds itself out as being engaged in the business of commercial and industrial wiring, electrical contracting, and dealing in electrical motors and generators, for private, commercial, and industrial uses. It holds a certificate of exemption as a manufacturer, pursuant to a Baltimore ordinance which exempts from taxation all personal property used entirely or primarily for the purposes of manufacturing.

"Appellee's principal activities fall roughly into three classes: (1) Repair, reconditioning, and rebuilding of electric motors, which accounted for 27.42 percent of appellee's gross income during the first ten months of 1942; (2) installation, relocation, extension, and repair of electrical wiring systems which accounted for 35.29 percent of its income; and (3) sale of new and used electric motors which accounted for 33.13 percent of its income.

"The motor repair and reconditioning work is performed either on appellee's premises, consisting of a two-story building, or on the premises of the customer for whom the work is done. All of the wiring is, of course, performed on the premises of the customer. To carry on its work, appellee employs a foreman, fourteen mechanics, eleven helpers, four trouble shooters, and six office employees.

"Appellee works on motors and wiring, and sells motors, for private, commercial, and industrial uses. Ninety-nine percent of its customers, however, are commercial or industrial firms. Thirty-two of these firms accounted, during the period covered by the stipulation, for 38 percent of appellee's motor repair work, 19 percent of its wiring work and 12 percent of its motor sales. Every mechanic employed by appellee worked in practically every workweek for some of these firms."

We think that there can be no question but that defendant's employees were engaged in the production of goods for commerce within the meaning of the act. As shown by the preceding statement, the greater part of its business consisted in the repair, rebuilding and reconditioning of

motors and in the installation, relocation, extension and repair of electrical wiring used in the production of goods for interstate commerce. An employee is deemed to be engaged in the production of goods for commerce within the meaning of the act if he is engaged "in any process or occupation necessary to the production thereof," 29 U.S.C.A. § 203(j); and the repair of motors and wiring for use in the production of goods for commerce was certainly a "process or occupation necessary to the production thereof." See Holland v. Amoskeag Mfg. Co., D.C., 44 F.Supp. 884, 887. There is nothing in the argument that the service is not to be deemed necessary within the meaning of the Act because it might have been obtained from a number of independent contractors. It was no less necessary because it might have been furnished by a number of persons who did not in fact furnish it. The question is whether it constituted a part of the integrated effort by which the goods were produced. Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 167. As said in the case cited:

"The argument would give an unwarranted rigidity to the application of the word 'necessary,' which has always been recognized as a word to be harmonized with its context. See McCulloch v. Maryland, 4 Wheat. 316, 413, 414, 4 L.Ed. 579. No hard and fast rule will tell us what can be dispensed with in 'the production of goods.' All depends upon the detail with which that bare phrase is clothed. In the law of infants' liability, what are 'necessaries' may well vary with the environment to which the infant is exposed: climate and station in life and many other factors. So, too, no hard and fast rule may be transposed from one industry to another to say what is necessary in 'the production of goods.' What is practically necessary to it will depend on its environment and position."

No one would contend, we think, that employees who did for the customers of the company what its employees did here would not have been engaged in the production of goods for commerce if they had been employed by the customers; but the fact that they were employed by an independent contractor makes no difference, since the application of the act depends not upon the nature of the employer's business but upon the character of the employees'

activity. Kirschbaum v. Walling, 316 U. S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 317 U. S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. We went into this subject quite fully in Bracey v. Luray, 4 Cir., 138 F.2d 8, 11–12, and we need not repeat what was said there. See also Davis v. Goodman, 4 Cir., 133 F.2d 52, holding an employer subject to the provisions of the act where all that his employees did was perform labor which enabled another manufacturer to turn out a product which entered into interstate commerce.

And we think it equally clear that the company does not fall within the exemption of 13(a) (2) of the act, 29 U.S. C.A. § 213(a) (2), which provides that the minimum wage and maximum hour provisions shall not apply to "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." Even if the company could be held to be a service establishment within the meaning of this exemption, the greater part of its servicing was not in intrastate commerce, but in the production of goods for interstate commerce, and the exemption did not apply to it for that reason. Fleming v. Arsenal Bldg. Corporation, 2 Cir., 125 F.2d 278, 280, affirmed Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. As said by Judge Learned Hand, speaking for the Circuit Court of Appeals of the Second Circuit in the case cited:

"Nor do we think that the defendant is a 'service establishment the greater part of whose * * * servicing is in intrastate commerce'; § 13(a) (2). * * * If it is a 'service establishment,' at least its exemption must depend upon the extent to which its servicing is intrastate. Suppose for example, that these manufacturers, instead of pressing the clothes themselves, sent them out to other shops which pressed only for them; the fact that the pressing took place in the same state as the cutting and stitching would not, we think, exempt the pressers; their servicing would be 'in interstate commerce.' The 'servicing' being a part of the 'production,' the test should be what kind of production it is a

part of. The question is really the same as that we have just considered: i. e., whether it is important how that production is divided among employers. It cannot be that if the exemption extends beyond retail 'servicing,' it is the character of the 'servicing' itself that counts, divorced from the 'production' of which it is a part. Again, we should be met by the anomaly arising from such an interpretation—the capricious incidence of the act resulting from the accident of the industrial division of the whole process."

In Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638, the Supreme Court not only affirmed the decision below but dealt with this particular point in the same way. The court said:

"A final objection to the decisions below need not detain us long. The petitioners' buildings cannot be regarded as 'service establishments' within the exemption of § 13(a) (2). Selling space in a loft building is not the equivalent of selling services to consumers, and, in any event, the 'greater part' of the 'servicing' done by the petitioners here is not in intrastate commerce. The suggestion that the Act, if applied to these employees, goes beyond the bounds of the commerce power is without merit."

See also McLeod v. Threlkeld, 319 U.S. 491, 494, 63 S.Ct. 1248, 87 L.Ed. 1538; note 6; Hanson v. Lagerstrom, 8 Cir., 133 F.2d 120; Consolidated Timber Co. v. Womack, 9 Cir., 132 F.2d 101; Walling v. New Orleans Private Patrol Service, D.C., 57 F. Supp. 143; Lorenzetti v. American Trust Co., D.C., 45 F.Supp. 128, 139.

■ And we do not think that the company can be held a retail or service establishment within the meaning of the act. The labor of its employees was performed almost altogether in rendering service to commercial and industrial concerns, where the cost of the service would not be absorbed by the one to whom they were rendered but would be passed on as a part of the price of the product. The whole policy of the act is to bring employees rendering this sort of service under its provisions. Thus in sec. 3(i), 29 U.S.C.A. § 203(i), goods, whose production for commerce subjects employees to the provisions of the act, are defined in the broadest terms and are then said not to include "goods after their delivery into the actual physical possession of the ultimate consumer thereof *other than a producer, manufacturer, or processor* thereof." (Italics supplied.) This throws light upon the sense in which the words "retail and service establishment" are used and indicates very clearly that they have application to establishments furnishing goods or services to the ultimate consumer, who does not expect to pass the cost on to others as a producer, manufacturer or processor. As we said in Guess v. Montague, 4 Cir., 140 F.2d 500, 503:

"In Bracey v. Luray, 4 Cir., 138 F.2d 8, this day decided, we hold that a retail establishment within the meaning of the exemption is one which sells in small quantities to the ultimate consumer. On the principle noscitur a sociis, the 'service' establishment contemplated by the exemption must be of the same sort as the 'retail' establishment therein referred to, i. e. it must be one 'selling services to consumers', and this is the clear intimation of the Supreme Court. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 526, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638. As suggested by the Circuit Court of Appeals of the Second Circuit in Fleming v. Arsenal Building Corporation, 2 Cir., 125 F.2d 278, 280, we think that the exemption 'should be limited to those who serve consumers directly, like tailors, or garages, or laundries'. Other illustrations of service establishments within the meaning of the statute have been given as 'barber shops, beauty parlors, shoe-shining parlors, clothes pressing clubs, laundries, automobile repair shops, or the like'. Wood v. Central Sand & Gravel Co., D.C., 33 F. Supp. 40, 47; Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, 572."

In Bracey v. Luray, supra, we pointed out that the exemption was not contained in the act as originally drafted but was inserted to make clear that the act would not apply to those dealing with the ultimate consumer. We said [138 F.2d 11]:

"The exemption was not contained in the bill as originally introduced into Congress. S. 2475, H.R. 7200, 75th Cong. 1st Sess. May 24, 1937. It was added by an amendment, the purpose of which was to make clear that the act would have no application to 'retail dry goods, retail butchering, grocers, retail clothing stores, department stores', located near and making occasional sales across state lines. 83 Cong.Rec. 7437-7438. Walling v. American Stores Co., 3 Cir., 133 F.2d 840, 843."

The services rendered to producers of goods for interstate commerce in the installation and repair of wiring and the repair, servicing and reconditioning of motors are sufficient without more to bring the employees of the company under the act. As to the rest, its business consisted in the sale of new motors and the reconditioning and sale of second hand motors. This business was clearly not that of a retail or service establishment within the meaning of the act. Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90; Guess v. Montague, supra.

The case is not distinguishable in principle, although there are a few minor factual differences, from that which was before us in Guess v. Montague, supra. What we have is not what anyone would think of as a retail or service establishment, like a grocery store or a barber shop, but an electrical machinery repair shop, which was engaged in manufacturing to the extent that it rebuilt or reconditioned electrical machinery. A large part of the services rendered by its employees was on the premises of its customers, and practically all of these were in furtherance of the production of goods for commerce and were of a sort which, if rendered by the employees of the customers, would unquestionably have brought them under the act. The sales which it made were not ordinary retail sales to consumers, but sales of machinery to be used for purposes of production. It is not clear that, if the work done by an employee is in interstate commerce or in the production of goods for interstate commerce, section 13(a) (2) can ever have application. See note 6 to McLeod v. Threlkeld, supra. Certainly it can have no application to a case such as this.

We have not overlooked the decision in Lonas v. National Linen Service Corporation, 6 Cir., 136 F.2d 433, and Martino v. Michigan Window Cleaning Co., 6 Cir., 145 F.2d 163; but, if these decisions are accepted as sound law, we think they are clearly distinguishable from the case at bar in that the services here were more clearly in furtherance of the production of goods for commerce and the establishment is more clearly not a retail or service establishment within the meaning of the act. Cf. McLeod v. Threlkeld, supra. The drawing of the line between what does and what does not fall under the act is not always an easy matter. The cases have been collected and classified in the note to 150

A.L.R. at p. 700 et seq. There can be no question, we think, but that the clear weight of authority as mirrored by these cases supports our conclusion that the company here is subject to the act.

Reversed.