Fernando Sierra Berdecía, Comisionado del Trabajo de Puerto Rico, demandante y apelado, *v.* Teódulo Llamas, haciendo negocios como T. Llamas, Hielo, demandado y apelante.

Núm. 10609.—*Sometido:* Agosto 26, 1952. *Resuelto:* Octubre 14, 1952.

*Víctor Rivera Colón,* abogado del apelante; *Joaquín Gallart Mendía,* abogado del Departamento del Trabajo y a su vez del apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Bajo las disposiciones de la Ley núm. 8 de 5 de abril de 1941 ((1) pág. 303), según ha sido enmendada, el Comisionado del Trabajo de Puerto Rico, Fernando Sierra Berdecía, radicó en la Sección de San Juan del extinto Tribunal de Distrito de Puerto Rico una demanda de *injunction* contra Teódulo Llamas, haciendo negocios como T. Llamas, Hielo, alegando que el demandado y aquí apelante, es dueño de un negocio de fabricación y venta de hielo al por menor o directamente a los consumidores; que después del 5 de abril de 1945, fecha en que fué promulgado el Decreto Mandatorio núm. 8 de la Junta de Salario Mínimo de Puerto Rico, aplicable a los negocios de ventas al por menor, el demandado se ha negado a conceder a un grupo de empleados suyos, que son chóferes y ayudantes de chóferes, las vacaciones con sueldo completo, a razón de 15 días al año, que han acumulado a su favor durante más de dos años, dedicándose esos chóferes y ayudantes de chóferes a la venta al por menor o directamente a los consumidores de hielo del querellado, todo ello en violación de lo dispuesto por el apartado F–3 de dicho Decreto Mandatorio núm. 8.[1] Solicitó el Comisionado del Trabajo que el tribunal inferior dictase una orden de injunction permanente, ordenando al demandado a conceder a los trabajadores ya mencionados las vacaciones ya acumuladas, con sueldo completo, y a establecer los turnos corres-

---

[1] El apartado F–3 del referido Decreto Mandatorio núm. 8 dispone lo siguiente:

"Tendrá derecho a vacaciones, a razón de quince días al año, con sueldo completo, todo empleado permanente, con excepción del aprendiz, que después de la promulgación de este Decreto trabaje por lo menos doce semanas consecutivas para el mismo patrono. Las vacaciones podrán acumularse durante dos años y se concederán por el patrono a solicitud del empleado en forma que no interrumpan la buena marcha del negocio, al cual fin se establecerán los turnos correspondientes. El patrono le pagará al empleado las vacaciones acumuladas cuando éste cese en su trabajo. Cuando el salario no se haya estipulado por días o períodos mayores se computará, para determinar el correspondiente a las vacaciones, en la forma dispuesta para licencia por enfermedad."

pondientes, y prohibiendo al demandado el continuar su práctica de infringir el citado apartado F-3 del Decreto Mandatorio núm. 8.

Formuló el demandado su contestación y el caso se dilucidó en sus méritos en una conferencia anterior al juicio (*pre-trial conference*), que sirvió como la vista del caso. En esa vista el demandado admitió los hechos en cuanto a que él no había concedido vacaciones, a tenor con dicho apartado F-3, a un grupo de chóferes y ayudantes de chóferes empleados del demandado que se dedicaban a la venta de hielo directamente a los consumidores. Alegó, sin embargo, el demandado que el Decreto núm. 8 no era aplicable a esos empleados, y se trabó la controversia a base de la cuestión de la aplicabilidad de tal Decreto. Ambas partes presentaron prueba oral y documental que discutiremos parcialmente más adelante, en torno a la interpretación del Decreto núm. 8, en cuanto a su extensión y aplicabilidad. Los representantes del Comisionado del Trabajo insistieron en que tal Decreto era aplicable, pero, de no serlo, sería entonces aplicable el Decreto Mandatorio núm. 12, que se refiere al servicio de transporte en Puerto Rico.

El antiguo Tribunal de Distrito de Puerto Rico, Sección de San Juan, dictó sentencia declarando con lugar la demanda de injunction, y contra esa sentencia ha apelado el demandado, señalando como único error el siguiente:

"Erró el Tribunal inferior al resolver que el Decreto Mandatorio [núm. 8] le es aplicable a la Industria del Hielo, que es el negocio del demandado."

El apartado A, inciso 1, del Decreto Mandatorio núm. 8 de la Junta de Salario Mínimo dispone lo siguiente:

"*Definición del Negocio.*—El Negocio de ventas al por menor al cual se aplica este Decreto es el que se describe en la siguiente definición:

"El Negocio de Ventas al por Menor comprende, sin que ello se entienda en modo alguno como limitación, todo acto, pro-

ceso, operación, trabajo o servicio necesarios, incidentales o
relacionados con las ventas al por menor, a traspasos directos
a los consumidores, de cualquier clase de mercaderías o artícu-
los a cambio de dinero, prestación o cosa de valor, cuando tales
ventas o traspasos se originen, concierten o consumen en algún
establecimiento *o en sitio cualquiera destinado total o parcial-
mente a esos fines,* o cuando se hagan fuera de dicho estableci-
miento o sitio a su nombre o para su beneficio. Quedan excluí-
dos, sin embargo, los negocios, industrias, ocupaciones o ramo
de los mismos que en el Decreto núm. 6 de esta Junta aplicable
a hoteles, restaurantes, cantinas y fuentes de soda (el cual no
quedará menoscabado en forma alguna), son objeto de regla-
mentación o están exceptuados de su alcance." (Bastardillas
nuestras.)

El tribunal a quo no resolvió que el Decreto núm. 8 fuese
aplicable a la totalidad de la industria de fabricación de
hielo, ni está envuelta en este caso determinación alguna en
cuanto a empleados del demandado y apelante que no se dedi-
quen directamente a ventas de hielo a los consumidores. El
tribunal inferior resolvió que los chóferes del demandado, y
los ayudantes de esos chóferes que tienen por ocupación la
venta en sí de hielo a los consumidores directamente, están
cubiertos por las disposiciones del Decreto núm. 8. Conside-
rando a esos empleados aisladamente, es indudable que ellos
se dedicaban a ventas de hielo al por menor.[2] Empero, el
argumento del apelante es al efecto, en síntesis, que no ha-
biendo Decreto Mandatorio alguno aplicable a la industria
del hielo, el núm. 8 no debe ser aplicado a empleados algunos
de esa industria; que el Decreto núm. 8 es aplicable exclusi-

---

[2] Aunque no está envuelta exactamente la misma situación legal
planteada en este caso, conviene señalar que en el caso de California de
*National Ice & Cold Storage Co.* v. *Pacific Fruit Express Co.*, 79 P.2d 380,
se resolvió que una contribución sobre ventas al por menor (*retail sales*)
era aplicable a la venta de hielo a una compañía que usaba el hielo, no
para el consumo directo, sino para fines de refrigeración de vagones ferro-
viarios, ya que el hielo no había sido comprado para su reventa. Al mismo
efecto véase el caso de *People* v. *Monterey County Ice & Development
Co.*, 84 P.2d 1069, en donde se resuelve que ventas de hielo a una com-
pañía para ser usado en la refrigeración de lechugas constituyen ven-
tas al por menor.

vamente a comerciantes que compran artículos ya elaborados y venden esos artículos a consumidores y no a industriales que fabrican y venden artículos como parte de un mismo negocio; que el estudio verificado por el comité correspondiente, cuyo estudio le sirvió de base a la Junta para aprobar el Decreto núm. 8 se refirió exclusivamente a comerciantes y vendedores dedicados únicamente a ventas al por menor, y no incluyó a industria alguna, aunque esa industria vendiese sus productos, y que la interpretación dada al Decreto núm. 8 por algunos funcionarios de la Junta excluye la aplicabilidad de tal Decreto.

 Considerando la política pública fundamental que tuvo en mente el legislador al aprobar la Ley núm. 8 de 1941 (conocida como la Ley de Salario Mínimo), o sea, la de mejorar las condiciones de trabajo para lograr normas mínimas de salud, eficiencia y bienestar general de los trabajadores—*Hospital San José* v. *Junta de Salario Mínimo*, 63 D.P.R. 747, 749—de haber dudas legítimas en cuanto a la aplicabilidad de un Decreto a determinada clase de empleados, no debe prevalecer una interpretación restrictiva que excluya a esos empleados de la protección del Decreto. Naturalmente, si el Decreto claramente no es aplicable a ciertos grupos de empleados, este Tribunal no debe sustituir su criterio por el del legislador o por el de la Junta de Salario Mínimo. En cuanto a este extremo, poco tenemos que añadir a lo expuesto por este Tribunal Supremo en el caso de *Hospital San José* v. *Junta Salario Mínimo*, supra, en donde se dice, en la pág. 751:

"Los deberes impuestos a la Junta y a los comités de Salario Mínimo nombrados y los poderes que se les conceden por la ley, están inspirados primordialmente en el deseo de nuestra legislatura de mejorar la salud, seguridad y bienestar de los trabajadores, después que dichos organismos hayan investigado los salarios, horas de labor y condiciones de trabajo prevalecientes en las distintas ocupaciones, negocios e industrias de Puerto

Rico. Las únicas personas excluídas de las disposiciones de la ley son los empleados en el servicio doméstico. Cualquier defecto u omisión en la definición de las distintas palabras o frases incluídas en la sección 30, supra, no debe ser motivo para que interpretemos el alcance de la ley en tal forma que desvirtuemos el propósito fundamental de la misma. Como dijo el Juez Frankfurter a nombre de la Corte Suprema Nacional en el caso de *Phelps Dodge Corporation* v. *Labor Board*, 313 U.S. 177, 185, al interpretar el alcance del 'National Labor Relations Act': 'Desemejante a los símbolos matemáticos, la fraseología de legislación social como ésta rara vez logra más que precisión aproximada en sus definiciones. Es por esto que todas las ayudas relevantes son consideradas para determinar su significado. De consideración dominante es el hecho de que las palabras adquieren alcance y funcionan debido a la historia de acontecimientos que ellas resumen'. En la ley federal la única definición de la palabra *'employee'*, en forma afirmativa es al efecto de que dicho término 'incluirá cualquier empleado' y luego en forma negativa excluye a los empleados agrícolas, a los del servicio doméstico o a cualquier persona empleada por su padre o esposo. Interpretando el alcance de la palabra 'empleado' la Corte Suprema Nacional en el caso de *National Labor Relations Board* v. *Hearst Publications*, decidido hace poco más de un mes, el 24 de abril de 1944 (——U.S.——), resolvió que 'el amplio lenguaje usado en las definiciones contenidas en la Ley, que por sus términos rechazan las limitaciones convencionales de tales conceptos como "empleado", "patrono" y "disputa obrera", no dejan lugar a dudas que su aplicabilidad debe ser determinada ampliamente, *en situaciones dudosas,* por los hechos económicos fundamentales más bien que técnica y exclusivamente por clasificaciones legales establecidas anteriormente' ... 'Dicho término (empleado) como otros similares, deben entenderse haciendo referencia al propósito de la ley y a los hechos envueltos en la relación económica.' "

En el propio caso de *National Labor Relations Board* v. *Hearst Publications*, 322 U.S. 111, 129, citado en el de *Hospital San José* v. *Junta Salario Mínimo*, supra, se dice que el término "empleado" no debe ser restringido indebidamente y debe ser interpretado con relación a los propósitos de la ley, y se dice:

"Cuando todas las condiciones de la relación requieran protección, debe darse esa protección."

En el caso más reciente de *Phillips Co.* v. *Walling*, 324 U.S. 490, 493, la Corte Suprema de los Estados Unidos dice lo siguiente:

"La Ley de Normas Razonables del Trabajo se hizo con el propósito de 'extender las fronteras del progreso social', 'asegurándole . . . a los trabajadores una compensación justa por un día adecuado de trabajo.' . . . Cualquier exención [o exclusión] de tal legislación humanitaria debe ser interpretada restrictivamente, siempre teniendo en cuenta el significado claro del estatuto y la intención del Congreso. El extender una exención a aquéllos que no estén claramente excluídos en la letra y en el espíritu de la ley, constituiría un abuso del proceso de interpretación y una frustración de la voluntad expresada por el pueblo."

El apartado A, inciso 1, del Decreto núm. 8 incluye ventas al por menor consumadas en algún establecimiento o en sitio cualquiera destinado total o parcialmente a esos fines. No solamente estaría justificado el decir que la fábrica del demandado se dedica parcialmente a la venta de hielo a los consumidores, sino que la realidad es que el propósito esencial de esa fábrica es vender hielo a los consumidores. La fábrica no tendría significación sin esas ventas al por menor. El apartado A, inciso 1, no excluye a trabajadores que se dediquen a ventas al por menor por el hecho de que los artículos así vendidos se originen en la fábrica de su patrono. Esa disposición es amplia y comprensiva, y el juzgador no debe suplir una exclusión donde no la hay en el Decreto, especialmente si el Decreto incluye a todos los trabajadores que se dediquen a ventas al por menor. Por esas razones es que dicho apartado A, inciso 1, es de aplicación a los trabajadores envueltos en este caso.

En *Sierra, Comisionado* v. *L. Rodríguez & Cía.*, 72 D.P.R. 1, se resuelve que los empleados de una sastrería adscrita a un establecimiento comercial que se dedica a ventas

al por menor están cubiertos por el Decreto núm. 8, ya que no es un negocio separado e independiente, sino parte de un mismo negocio. En *Sierra, Com.* v. *San Miguel Fertilizer Corp.*, 73 D.P.R. 341, la demandada manufacturaba fertilizantes y los vendía a colonos, otros agricultores, avicultores y ganaderos. Se resolvió que los empleados que trabajaban en el establecimiento destinado a la distribución o venta de tales productos a tales personas estaban cubiertos por el apartado A–1 del Decreto núm. 8.

En *Sierra, Comisionado* v. *Morales*, 72 D.P.R. 693, se resolvió no era de aplicación el Decreto núm. 8 a chóferes que conducían mercancías en ventas al por mayor, aun si esas mercancías eran conducidas también a tiendas pertenecientes al propio mayorista, para que esas tiendas vendiesen al por menor. El *ratio decidendi* fué que el demandado no dejó de ser mayorista por el hecho de distribuir artículos a sí mismo. El caso, por lo tanto, no es aplicable al de autos.

La ley federal de Normas Razonables del Trabajo dispone que los trabajadores o empleados que se dedican a ventas al por menor están exentos y no están cubiertos por las disposiciones de la ley. En *Phillips Co.* v. *Walling*, supra, la compañía peticionaria tenía una cadena de 49 colmados que se dedicaban a ventas al por menor, y tenía un almacén. Se resolvió por la Corte Suprema de los Estados Unidos que aunque los empleados en los colmados caían dentro de la exención, no así los empleados en el almacén, ni los empleados en las oficinas centrales, ya que se dedicaban a una actividad distinta y separada, y el negocio no debía considerarse como integrado. Ello implicaba, no obstante, que los empleados en las tiendas recibían un trato distinto bajo la ley. Véase el comentario y la Anotación sobre este caso en 157 A.L.R. 881.

Bajo esa misma ley y refiriéndose a la misma exención de trabajadores dedicándose a ventas al por menor, en *Sa-*

*muels* v. *Houston*, 46 F.Supp. 364, se trataba de una planta de hielo que se dedicaba a la manufactura y a la venta de hielo. Se resolvió que la planta de hielo era un establecimiento dedicado a ventas al por menor, ya que, en esencia, era un establecimiento industrial. Sin embargo, el trabajador concernido trabajaba en la propia fábrica y no en la rama comercial. Por lo tanto, el caso no es directamente aplicable. En *Collins* v. *Kidd*, 38 F.Supp. 634, se trataba también de una planta de hielo y se establece un criterio contrario al expresado en el caso de *Samuels* v. *Houston*, supra.

■ Es cierto que en la vista celebrada en el tribunal inferior, uno de los miembros de la Junta de Salario Mínimo, que lo era tal al aprobarse el Decreto núm. 8, expresó su opinión al efecto de que la intención de la Junta había sido la de hacer aplicable el Decreto núm. 8 exclusivamente a establecimientos comerciales. Ese testimonio no era admisible. Si una legislación es ambigua, puede explicarse la ambigüedad oralmente, pero un récord legislativo no puede ser limitado por evidencia oral en cuanto a los móviles, propósitos o actuaciones personales de sus miembros individuales. *Elicier* v. *Sucn. Cautiño*, 70 D.P.R. 432, 437; 20 Am. Jur. 1021; 98 A.L.R. 1240. No es admisible testimonio de un miembro de la Legislatura para demostrar que la intención legislativa es distinta a la que surge del estatuto. *Ex parte Goodrich*, 117 Pac. 451.(³) De todos modos, aun de ser admisible esa opinión, ella no es obligatoria para los tribunales.(⁴)

---

(³) Esta situación es distinta a la resuelta en el caso de *Sierra, Comisionado* v. *Quilichini*, 72 D.P.R. 659, en donde se dijo, citando del Sumario: "Para determinar la intención de la Junta de Salario Mínimo en el caso de que un Decreto Mandatorio expresamente nada específico disponga respecto a empleados en la industria por él cubierta, puede recurrirse al concepto que *la Junta* haya dado a tales empleados en otras actividades." (Bastardillas nuestras.)

(⁴) Como cuestión de hecho, otro miembro de la Junta, que participó en la aprobación del Decreto, expresó una opinión contraria.

El problema más importante que se ha sometido a nuestra consideración en cuanto a la aplicabilidad del Decreto núm. 8 a los trabajadores envueltos en este litigio se refiere al hecho de que la industria de fabricación de hielo no intervino, específicamente y como tal industria, en ninguno de los procedimientos administrativos que culminaron en la adopción del referido Decreto. Ningún representante de dicha industria específica fué miembro del comité que formuló las recomendaciones correspondientes a la Junta de Salario Mínimo. Los representantes patronales en ese comité eran exclusivamente comerciantes, unos representando al negocio de ventas de las llamadas mercancías secas y otros representando al negocio de ventas de las llamadas mercancías mojadas. Ese comité estudió distintas actividades, tales como colmados, tiendas de calzado, farmacias, ferreterías, mercería y bazares. No se estudió la actividad económica de la fabricación de hielo. A base de ese estudio del comité fué que la Junta de Salario Mínimo adoptó el Decreto núm. 8. En los avisos publicados en los periódicos con relación a la creación del comité y con respecto a la audiencia pública que celebró la Junta de Salario Mínimo en torno a ese decreto no se mencionó ni se notificó específicamente a la industria de fabricación de hielo.

En su esencia, el argumento del aquí peticionario consiste en que él, como dueño de un negocio de fabricación de hielo no tuvo una oportunidad justa y adecuada de ser oído en cualquier etapa del procedimiento que dió lugar a la adopción del decreto, que no fué debidamente notificado y que su negocio no fué objeto de estudio, por todo lo cual sería injusto y contrario a derecho, según el peticionario, el aplicar tal decreto a cualquier aspecto del negocio del peticionario.

En términos generales, convenimos en que una persona, negocio o entidad a quien se pretende aplicar un decreto, debe haber tenido una oportunidad adecuada de ser oído, lo cual incluye una debida notificación, antes de la adopción del

decreto, y en alguna etapa del procedimiento. *Opp Cotton Mills* v. *Administrator,* 312 U.S. 126, 152, 153; 51 *Yale Law Journal,* 1093, 1104. Estos requisitos de notificación y de oportunidad de ser oído se definen por el estatuto correspondiente que establezca el poder de una entidad administrativa para adoptar decretos de salario mínimo, que, en este caso, es la Ley núm. 8, aprobada en 5 de abril de 1941 ((1) pág. 303).[5] Examinemos las secciones pertinentes de dicha ley, conocida como de Salario Mínimo, tal como estas disposiciones regían al tiempo de aprobarse el Decreto Mandatorio que consideramos.[5a]

La sección 6 de tal ley disponía entonces lo siguiente:

"Sección 6.—Si en cualquier ocupación, negocio, o industria, o en cualquier operación, rama, proceso o actividad de los mismos, los salarios que se pagan son insuficientes para satisfacer las necesidades normales de los trabajadores y perjudiciales a la conservación de las normas mínimas de vida necesarias para la salud, la eficiencia y el bienestar general de los mismos, será deber de la junta nombrar un Comité de Salario Mínimo compuesto de dos representantes de los patronos a propuesta de éstos y dos representantes de los trabajadores de dicha ocupación, negocio o industria, o de la operación, rama, proceso o

---

[5] Existe un conflicto en las autoridades judiciales en cuanto a si una notificación adecuada es, en ausencia de un estatuto, un requisito constitucional de un debido proceso de ley. 51 *Yale Law Journal* 1104; Gellhorn, *Administrative Law, Cases and Comments,* págs. 331–460. El comentarista Kenneth Culp Davis expresa su criterio al efecto de que deben observarse todos los requisitos de un proceso judicial cuando se adjudiquen hechos que se relacionen especialmente con personas o entidades específicas, como por ejemplo, en el caso de tarifas de una empresa de servicio público pero que en aquellos casos que no estén limitados a personas o entidades específicas, no deben observarse los mismos requisitos estrictos ya que están envueltos hechos económicos, financieros y estadísticos de naturaleza general, tal como ocurre en los casos de fijación de precios y de salarios. 51 *Yale Law Journal* 1106, 1107, 1140. Es innecesario que consideremos esta cuestión en el caso de autos ya que nuestra ley de salario mínimo establece el procedimiento de notificación y de vistas. Pero debemos señalar la posibilidad de que el requisito de notificación en casos de fijación de salarios no debe ser tan estricto como en los casos de fijación de tarifas.

[5a] Nota del editor: Véase Resolución de 20 de octubre de 1952 enmendatoria de esta última oración y la que sigue, tal como aquí aparecen.

actividad de dicha ocupación, negocio o industria, que serán propuestos por los trabajadores y de un quinto miembro en representación de los intereses públicos, quien actuará como presidente del comité.

"Los miembros de tal Comité de Salario Mínimo percibirán una dieta de cinco (5) dólares cuando se reúnan en funciones oficiales y se les pagarán los gastos de viaje necesarios para el desempeño de su cometido.

"La junta promulgará las reglas y reglamentos concernientes a la selección de los miembros de estos comités y al procedimiento a seguirse por los mismos, y tendrá exclusiva jurisdicción sobre todas`las cuestiones que surjan en cuanto a la validez del procedimiento y a las recomendaciones que hagan dichos comités. Los procedimientos y deliberaciones de los comités de salario mínimo serán por escrito para el uso de la junta y serán admisibles como evidencia en cualquier procedimiento ante la junta.

"La junta facilitará a los comités de salario mínimo servicios adecuados de abogados, contables, taquígrafos, oficinistas, y demás personal que fuere necesario para llevar a cabo su labor.

"A requerimiento de la junta, será deber de todo Comité de Salario Mínimo investigar las condiciones de trabajo que prevalecen en las ocupaciones, negocios o industrias de que se trate, e informar a la junta sus conclusiones, que incluirán lo siguiente:

"(1) Un estimado del salario mínimo indispensable para satisfacer las necesidades normales de los trabajadores empleados en la ocupación, negocio o industria en cuestión y conservar las normas mínimas de vida necesarias para la salud, la eficiencia y el bienestar general de los mismos.

"(2) El número de horas de labor por día en la ocupación, negocio o industria en cuestión consistente con la salud, seguridad y bienestar de tales trabajadores.

"(3) Las condiciones de trabajo requeridas para la conservación de la salud, la seguridad y el bienestar de los trabajadores en dicha ocupación, negocio o industria.

"Todo comité de salario mínimo rendirá informe a la junta dentro del término de tres (3) meses, o de la prórroga que en caso justificado le concediere la junta. En caso de que un comité de salario mínimo no rindiere su informe dentro del término señalado, o de la prórroga que se le concediere, o en caso de

que sus miembros no lograren ponerse de acuerdo y rendir un informe por votación de mayoría, la junta podrá declarar disuelto dicho comité y nombrar otro para hacer la investigación e informe correspondientes."

Las secciones 8, 9 y 10 leen así:

"Sección 8.—Con vista del informe rendido por el Comité de Salario Mínimo, y previa audiencia pública de las partes interesadas y del público, la junta tendrá autoridad para fijar:

"(1) El tipo mínimo de salario que deberá pagarse a los trabajadores empleados en la ocupación, negocio o industria en cuestión, o en la operación, rama, proceso o actividad de la ocupación, negocio o industria de que se trate.

"Cuando el salario mínimo fijado sea menor del indicado por el comité, la junta se dirigirá al departamento, negociado u organismo del Gobierno de Puerto Rico relacionado con esa rama de la producción para que la ayude, estimule o fomente su progresivo desenvolvimiento, a fin de que pueda pagar el salario recomendado por el comité a la brevedad posible.

"(2) El máximo de horas de labor consistente con la salud, la seguridad y el bienestar general de los trabajadores en dicha ocupación, negocio o industria; *Disponiéndose,* que las horas que se fijaren no excedan del máximo establecido o que más adelante se estableciere por ley.

"(3) Las condiciones de trabajo requeridas para la conservación de la salud, la seguridad y el bienestar de los trabajadores en dicha ocupación, negocio o industria.

"Sección 9.—Tan pronto como la junta fijare el día y sitio para la celebración de una audiencia pública con el objeto de considerar y determinar lo que se expresa en la sección anterior, procederá a anunciar dicha audiencia mediante avisos que se publicarán por lo menos en un periódico de general circulación en la Isla con no menos de diez (10) días de anticipación.

"Sección 10.—Después de celebrada dicha audiencia, la junta deberá dictar un decreto mandatorio, que será efectivo sesenta (60) días después de su promulgación, especificando el tipo mínimo de salario que deberá pagarse a los trabajadores empleados en la ocupación, negocio o industria en cuestión, o en la operación, rama, proceso o actividad de dicha ocupación, negocio o industria de que se trate, las horas máximas de labor y las

condiciones de trabajo requeridas para la conservación de la salud, la seguridad y el bienestar general de los trabajadores en dicha ocupación, negocio o industria."

La sección 12, tal como fué enmendada por la Ley núm. 9 de 20 de marzo de 1942, ((1) pág. 301), vigente en la fecha en que se aprobó el Decreto núm. 8, dispone, en parte, lo siguiente:

"Sección 12.—Al fijar el salario mínimo, la junta deberá tomar en consideración el coste de producción, la situación financiera y económica de las industrias o ramas de la producción afectadas, las fluctuaciones de mercado, así como las condiciones especiales existentes en la zona o región de que se trate.

"Previa recomendación del correspondiente Comité de Salario Mínimo, la junta podrá clasificar los trabajos en cualquier ocupación, negocio o industria de acuerdo con la naturaleza de los servicios a rendir y aprobar escalas de salarios mínimos apropiados para distintas clases de trabajo, con el objeto de fijar para cada clasificación el tipo más alto de salario mínimo compatible con los propósitos de esta Ley. La junta podrá aprobar también salarios mínimos diferentes para distintas zonas o regiones, cuando a juicio de la junta tal diferenciación sea aconsejable debido a las condiciones existentes en dichas zonas o regiones, siempre que tal acción no conceda ventaja de competencia a otra u otras zonas o regiones; Disponiéndose, sin embargo, que al aprobarse el salario mínimo para una ocupación, negocio o industria el tipo fijado será uniforme para toda ocupación, negocio o industria de la misma clase, categoría, o importancia en la zona o región de que se trate."

Debe observarse, en cuanto a esta última sección, que la enmienda introducida por dicha Ley número 9 implica la eliminación del requisito de que el tipo de salario sea uniforme para toda ocupación, negocio o industria pero introduce el nuevo concepto de que pueden ser aprobados salarios para distintas clases de trabajo en cualquier ocupación, negocio o industria.

La sección 24, tal como estaba vigente en la fecha de la adopción del decreto, dispone lo siguiente:

"Sección 24.—(a) En todo proceso por violación de cualquiera de las disposiciones de esta Ley de Salario Mínimo, el máximo de horas de labor y las condiciones de trabajo fijados por la Junta como aquí se determina, se considerarán *prima facie* que son razonables y legales y que constituyen el salario de vida, el máximo de horas de labor y las condiciones de trabajo que requiere esta Ley.

"(b) Las conclusiones de hecho a que llegue la junta actuando dentro de sus poderes, será, en ausencia de fraude, concluyente; *Disponiéndose,* que cualquier persona perjudicada directa o indirectamente por cualquier decreto o regla de la junta, puede solicitar de ésta una reconsideración dentro de los veinte (20) días de haberse promulgado dicho decreto o regla. La solicitud de reconsideración debe hacerse bajo juramento y en ella se especificarán sus fundamentos; *Disponiéndose,* que sólo podrá concederse una reconsideración por una de las siguientes causas: que la·junta actuó sin autoridad o en exceso de sus poderes; o que el decreto, regla u orden se obtuvo mediante fraude.

"Contra la resolución final que dictare la junta sobre el particular, podrá solicitarse revisión ante el Tribunal Supremo de Puerto Rico dentro del término de quince (15) días después de su notificación. El tribunal podrá confirmar o desestimar la decisión de la junta; pero la desestimación sólo tendrá lugar por uno de los siguientes fundamentos:

"Que la junta actuó sin autoridad o en exceso de sus poderes; o que el decreto, regla u orden se obtuvo mediante fraude.

"(c) La radicación de una solicitud de reconsideración tendrá el efecto de suspender el decreto, regla u orden en cuestión únicamente en cuanto a la parte o partes promoventes y por un período que no excederá de veinte (20) días, a menos que la junta extienda el plazo de la suspensión, para lo cual se le confiere por la presente plenos poderes.

"(d) Establecido un recurso de revisión ante el Tribunal Supremo será deber de la junta elevar a dicho Tribunal los autos originales del caso, consistentes del informe (*findings*) del Comité de Salario Mínimo, el expediente de las audiencias celebradas por la junta, el decreto recurrido, la solicitud de reconsideración y la resolución dictada, así como cualquier otro procedimiento recaído en el caso.

"El recurso ante el Tribunal Supremo producirá la suspensión del decreto recurrido cuando mediare la prestación de una

fianza para garantizar el pago total de los salarios envueltos en el recurso, más una cantidad razonable para honorarios en caso de que el tribunal desestimare el procedimiento."

La sección 30 dispone, en parte, lo siguiente en cuanto a definiciones:

"
. . . . . . .

" 'Patrono' incluye toda persona natural o jurídica dedicada a actividades industriales, comerciales, de negocios, agrícolas o de servicio público que emplea a obreros, empleados o trabajadores mediante paga, jornal, salario o cualquier otra manera de compensación.

" 'Patrono' incluye al gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica.

" 'Ocupación' incluye toda obra o trabajo en factorías, molinos, centrales, talleres, establecimientos, fábricas, fincas, haciendas, estancias, empresas de transporte y comunicación y sitios de cualquier clase donde se realice labor o negocios lucrativos.

" 'Negocio' incluye toda obra o trabajo en almacenes, tiendas, establecimientos o sitios de cualquier clase donde se realicen transacciones mercantiles o se presten servicios mediante remuneración.

" 'Industria' incluye toda obra o trabajo que se realice en fábricas, talleres, empresas mecánicas o en establecimientos o sitios donde se realice labor para construcciones o edificaciones o para la obtención, transformación o transporte de uno o varios productos naturales, o se elaboren artículos o efectos destinados al comercio.

" 'Obrero', 'Empleado', 'Trabajador' incluyen a todo trabajador manual, artesano, jornalero, dependiente de comercio y a toda persona empleada mediante remuneración en cualquier ocupación, negocio o industria.

"Los términos incluídos en esta sección no excluirán ningún otro término comprensivo de actividades agrícolas, industriales o comerciales. Las disposiciones de esta Ley no se aplicarán a personas empleadas en el servicio doméstico."

En este caso se publicaron los avisos correspondientes en cuanto a una petición de nombres de candidatos para la for-

mación del comité y en cuanto a la celebración de la audiencia pública relativa al decreto que estamos discutiendo. Esos avisos disponen lo siguiente:

"AVISO.

"*A los Patronos y Empleados del Negocio de Ventas al por Menor.*

"De todos los patronos y empleados del Negocio de Ventas al por Menor, según se define éste más adelante, se solicitan candidatos para el Comité de Salario Mínimo que ha de investigar el referido negocio con el propósito de recomendar a esta Junta el salario mínimo, las horas de labor y las condiciones de trabajo que deben prevalecer en el mismo.

"El Comité en cuestión estará compuesto por cinco personas: dos en representación de los empleados, dos en representación de los patronos y un quinto miembro en representación de los intereses públicos, quien a la vez presidirá el Comité. Tanto los empleados como los patronos, o las organizaciones de cualesquiera de ellos, pueden someter cuantos candidatos estimen conveniente, sin que sean menos de cuatro por cada parte proponente para que la Junta tenga oportunidad de selección. Cualquier número de patronos o de obreros puede reunirse, elegir sus representantes y someter sus nombres a esta Junta como candidatos para el referido Comité.

"Los patronos o empleados con derecho a someter candidatos son los comprendidos en la siguiente definición del Negocio de Ventas al Por Menor, que podrá enmendarse para ampliarla o limitarla:

" 'El Negocio de Ventas al Por Menor comprende, sin que ello se entienda en modo alguno como limitación, todo acto, proceso, operación, trabajo o servicio necesarios, incidentales o relacionados con las ventas al por menor, o traspasos directos a los consumidores de cualquier clase de mercadería o artículos a cambio de dinero, prestación o cosa de valor, cuando tales ventas o traspasos se originen, concierten o consumen en algún establecimiento o en sitio cualquiera destinado total o parcialmente a esos fines, o por él o para su beneficio. Quedan excluídos, sin embargo, los establecimientos que en el Decreto Mandatorio núm. 6 de esta Junta, aplicable a hoteles, restaurantes,

cantinas y fuentes de soda, (el cual no quedará menoscabado en forma alguna), son objeto de reglamentación o están exceptuados de su alcance.'

"Se recibirán nombres de candidatos en las oficinas de la Junta hasta el 23 de mayo de 1944.

"9 de mayo de 1944
"Junta de Salario Mínimo
"Apartado 3910
"Santurce, Puerto Rico.

*Gabriel Guerra Mondragón.*
*Presidente."*

## "AVISO.

"Por la presente se pospone hasta el 30 de mayo de 1944 la fecha para el envío de candidatos de entre los cuales esta Junta nombrará el Comité de Salario Mínimo que ha de investigar el negocio de Ventas al por Menor.

"Se urge de los patronos y empleados que se reúnan y envíen dichos candidatos a la mayor brevedad posible para darle la oportunidad a la Junta de seleccionar personas que representen lo más genuinamente posible a dichas partes.
"26 de mayo de 1944.

*"Gabriel Guerra Mondragón.*
*Presidente."*

## "AVISO DE AUDIENCIA PUBLICA.

### "Negocio de Ventas al por Menor.

"Se notifica a todo empleado, patrono o interesado en el Negocio de Ventas al por Menor y al público en general, que el Comité de Salario Mínimo designado por esta Junta para investigar el referido negocio y formular sus conclusiones a la Junta, ha rendido a ésta el correspondiente informe y le ha hecho sus recomendaciones, incluyendo un estimado del salario mínimo indispensable, el número razonable de horas diarias de labor, y las condiciones de trabajo requeridas, a tenor con lo dispuesto en el Artículo 6 de la Ley núm. 8 de 5 de abril de 1941, subsiguientemente enmendada.

"Y se les advierte a todos que la Junta de Salario Mínimo en vista del aludido informe, celebrará audiencia pública el miércoles 27 de septiembre de 1944 y día o días sucesivos necesarios, a las 9:00 de la mañana en el salón de actos del Depar-

tamento de Agricultura y Comercio, Ave. Fernández Juncos, Parada 19, Santurce, ciudad de San Juan, al objeto de considerar el mencionado informe, oír a las partes interesadas y al público sobre el asunto y en su día determinar: 1—el tipo mínimo de salario que deberá pagarse a los empleados en el Negocio de Ventas al por Menor; 2—el máximo de horas de labor consistente con la salud, la seguridad y el bienestar de dichos empleados; 3—las condiciones de trabajo requeridas para la conservación de la salud, la seguridad y el bienestar de los mismos empleados; y 4—cualquier otro incidente que corresponda para los fines expresados.

"Las personas que interesen copia del informe mencionado podrán obtenerla en esta Junta y aquéllas que deseen comparecer a la audiencia se servirán informarlo previamente por escrito al suscribiente para ayudar a la mejor organización de la misma.

"San Juan de Puerto Rico a 15 de septiembre de 1944.

"*Gabriel Guerra Mondragón.*
*Presidente.*"

En términos generales no es necesario enumerar literalmente en un aviso de audiencia pública en cuanto a una actuación administrativa a todas y cada una de las personas que puedan ser afectadas por la determinación administrativa. De existir un grupo de personas con intereses similares que puedan ser afectadas por una determinación de una junta, es innecesario notificar específicamente a todas y cada una de esas personas, ya que ello sería impracticable y contrario a la conveniencia administrativa. Por ejemplo, en el caso de *Bowles* v. *Willingham,* 321 U.S. 503, 519, 521 se resuelve que en la fijación de rentas o alquileres razonables no es necesario notificar ni suministrar audiencia a todos los miles de arrendadores que puedan ser afectados por tal fijación. Se expone en la opinión que de haber legislado el Congreso directamente fijando rentas, no habría habido necesidad de citar o notificar a los arrendadores y que no era necesario que el Congreso formulara tal requisito cuando delegó tal poder a una agencia administrativa. Se indica, además, en dicha opinión de la Corte Suprema de los Estados

Unidos que el estatuto establece el derecho a revisión judicial y que, bajo las circunstancias de dicho caso, tal revisión judicial es suficiente para cumplir los requisitos de un debido proceso de ley. En *Bi-Metallic Co.* v. *Colorado,* 239 U.S. 441, el Juez Holmes, en nombre de la Corte, indica que cuando una regla de conducta se aplica a várias personas es impracticable el que todas y cada una de esas personas participen en la formulación de tal regla. Véase además *People* v. *Orvis,* 133 N.E. 787.

Refiriéndonos específicamente a decretos de salario mínimo, adoptamos y aprobamos el criterio establecido en el caso de *Pearson* v. *Walling,* 138 F.2d 655, *certiorari* denegado en 321 U.S. 775. Este caso se refiere a una fijación de salarios por el administrador de salario mínimo. Se resuelve que la definición de la industria de productos de madera, al incluir en términos generales los productos especializados de madera, era razonablemente suficiente para incluir la fabricación de arcos y flechas, y que la notificación por avisos publicados era legalmente suficiente, ya que en los avisos se incluía la definición general. Se dice en la opinión:

"Como se admite por los apelantes, si una industria ha sido definida por el administrador con suficiente claridad, y una notificación y oportunidad de concurrir a una vista han sido concedidas en forma apropiada de acuerdo con los requisitos de la ley, la cuestión referente a si un artículo o producto determinado debería haber sido incluído en tal industria o en otra, o en alguna clasificación especial, es sustancialmente una cuestión de conveniencia y discreción administrativa (*Opp Cotton Mills* v. *Administrador,* supra), y, de todos modos, cuando ha habido una definición lo suficientemente clara y ha habido una notificación adecuada y una debida oportunidad para ser oído, cualquier cuestión de irrazonabilidad o de arbitrariedad en conexión con la adopción de una orden de salarios, se pueda levantar solamente a través de una petición de revisión judicial. . . .

". . . La ley no significa que el Congreso tenía la intención de obligar al administrador a enumerar en su definición cada producto específico que pudiese estar cubierto por la orden. La

tentativa de hacer tal enumeración . . . sería, con toda seguridad, una tarea excesivamente difícil y casi imposible. El poder delegado al administrador para hacer definiciones y clasificaciones y para fijar salarios sobre tal base evidentemente se delegó con la intención de ayudar a llevar a cabo los amplios propósitos reparadores de la ley. . . . Sobre la base de tales principios, nosotros creemos que el administrador, al formular una definición para una orden de salarios, solamente tenía que bosquejar con claridad y seguridad razonables los límites generales o la extensión de la industria que ha de ser cubierta y, cuando esto se ha hecho, y se ha concedido una oportunidad general para una audiencia, después de una notificación, no hay injusticia legal alguna en aplicar la orden a cualquier producto que, por deducción o inferencia razonable y natural, caiga dentro de las fronteras que se han señalado, y que no han sido específicamente exceptuados de tal definición. En cuanto a este punto (o sea, en cuanto al alcance de tal definición), al igual que con respecto a cualquier ley de naturaleza reparadora, lo que se pide es una seguridad razonable y práctica, y no una precisión legalista. . . .

". . . . El administrador no tenía que hacer una enumeración de los muchos artículos o productos menores que podrían estar envueltos en la industria y todo producto en el cual la madera sea el ingrediente básico, y que no fueron objeto de una excepción específica debían ser considerados como suficientemente incluídos en el término general 'productos especializados de madera' . . . . El debido proceso de ley no exige que en un procedimiento de esta naturaleza todas aquellas personas que pudieran estar afectadas por una orden de salarios tengan que tener conocimiento personal en cuanto al procedimiento que esté pendiente, o en cuanto a la adopción de la orden. La ley no lo requiere y tal condición sería imposible en la práctica. La garantía constitucional de un debido proceso de ley exige solamente que tal disposición de notificación y oportunidad de ser oído sea justa y razonable en la situación que pueda estar envuelta. . . La notificación de la audiencia por publicación en el Registro Federal o por cualquier otro medio que el administrador considere que sea adecuado para servir de notificación general a las personas interesadas, satisface en forma suficiente el requisito general de un debido proceso de ley en un procedimiento para la adopción de una orden reparadora de salarios, bajo una definición de la industria que razonablemente indique

a los productores de ciertos artículos que su producto está, con seguridad razonable, cubierto por la definición . . . El hecho en sí de que un productor individual no se entere realmente de la celebración de la audiencia o de la adopción de la orden no es un elemento definitivo."

El mismo criterio general señalado en el último caso citado se ratifica en *Walling* v. *Cohen,* 140 F.2d. 453, en donde se resuelve específicamente que en virtud de una interpretación liberal de la Ley federal de Normas Razonables de Trabajo, a los fines de llevar a cabo su intención y su propósito reparador, una definición de la industria de ropas, que se refiere a la manufactura de toda clase de ropa hecha mediante procesos de corte, costura y bordado, cubre toda clase de ropas, incluyendo sombreros y gorras. Se indica que no era necesario para el administrador el identificar específicamente cada artículo incluído en el término 'ropa', ya que de exigirse tal identificación ello sería una imposición irrazonable e injustificada.

En el caso de *Walling* v. *Brooklyn Braid Co.,* 152 F.2d. 938, también se cita con aprobación la doctrina general expresada en el caso de *Pearson* v. *Walling,* supra, y se resuelve que una orden de salarios conteniendo una definición general de toda clase de artículos bordados a mano o por maquinaria es lo suficientemente amplia para cubrir la manufactura de lazos de corbata o de cinta, y de borlas, aun si los lazos y las borlas no estaban específicamente mencionados en la definición ya que tal omisión no era decisiva y se resuelve además que una interpretación que el administrador le dió a una orden de salarios incluyendo ciertos artículos específicos debe ser sostenida a menos que la actuación del administrador sea arbitraria o caprichosa. *Walling* v. *Cohen,* supra.

En *Walling* v. *Higgins,* 47 F. Supp. 856, se resuelve que una orden de salarios que se refiere a la industria de productos del papel, incluye la producción de libros de muestra en donde se usa el papel como un ingrediente.

En 56 C.J.S. 729, se resume la regla general en la forma siguiente:

"Bajo la sección 8(f) de la Ley de Normas Razonables del Trabajo se requiere que todas las órdenes de salarios promulgadas por el administrador definirán la industria y sus clasificaciones a las cuales se apliquen tales órdenes, pero el administrador no tiene que enumerar en su definición cada producto específico que sea cubierto por la orden. Es suficiente que la definición bosqueje con razonable claridad los límites generales de la industria a ser cubierta y cuando esto se ha hecho y se ha concedido una oportunidad general para ser oído, después de una debida notificación, no hay injusticia alguna en aplicar administrativamente la orden a cualquier producto que caiga razonable y naturalmente dentro de las fronteras señaladas."

Refiriéndonos ahora a las circunstancias específicas del caso de autos, como ya hemos indicado anteriormente se publicaron los avisos correspondientes para la designación de candidatos que serían miembros del comité y para la celebración de la audiencia pública de partes interesadas y del público, requeridos por las secciones 8 y 9 de la ya mencionada Ley de Salario Mínimo. En el aviso de audiencia pública publicado el día 16 de septiembre de 1944 se indica que la audiencia de la junta se refería a los empleados en el negocio de ventas al por menor. En el aviso solicitando nombres de candidatos para la formación del comité, publicado el día 11 de mayo de 1944, se indica que los patronos o empleados son los comprendidos en la definición del negocio de ventas al por menor, "que podrá enmendarse para ampliarla o limitarla", y se incorporó expresamente en el aviso la definición que hemos descrito anteriormente en esta opinión. Una interpretación razonable y lógica de esa definición le indicaba al apelante en este caso, como persona interesada, que el decreto prospectivo sobre el negocio de ventas al por menor incluía lógicamente a aquellos empleados del apelante que se dedicasen directamente a ventas al por menor, o sea, a vender hielo directamente a los consumidores. Los actos, operaciones, trabajos o servicios de esos empleados

eran, y son, incidentales o relacionados con ventas al por menor, y tales ventas de hielo a los consumidores se originaban, y se originan, en el establecimiento o sitio perteneciente al apelante, que está destinado, por lo menos parcialmente, a los fines de venta de hielo a los consumidores, todo ello de acuerdo con los términos de la definición que fué debidamente publicada. Además, la naturaleza en sí del negocio de fabricación de hielo implica que la razón de ser, el propósito único y la esencia de tal negocio consiste precisamente en llevar a cabo ventas al por menor directamente a los consumidores. El proceso de fabricación es, naturalmente, necesario para que se pueda llevar a cabo la venta pero, desde un punto de vista relativo, la fabricación es incidental a la función básica del negocio cual es la venta directa a los consumidores. La situación posiblemente podría ser distinta en cuanto a un negocio de fabricación de ciertos productos que envuelvan una organización complicada en donde se utilicen distintos intermediarios, llegándose final e indirectamente a los contactos con los consumidores, pero en el caso de una fábrica de hielo el contacto entre el fabricante y el consumidor es mucho más directo y mucho menos complejo, por lo cual es razonable y justo el incluir en la definición general de ventas al por menor a los empleados del negocio de hielo que se dedican a vender ese producto directamente a los consumidores.

En 56 C.J.S. 676 se indica que el hecho de que un negocio se dedique a la manufactura en forma incidental a las ventas al por menor del producto de su negocio no altera su carácter como negocio de venta al por menor. *Fountain* v. *St. Joseph Water Co.*, 180 S.W.2d. 28; *Bozeman* v. *Rhodes-Jennings Furniture Co.*, 181 S.W.2d. 142. Esa regla no es aplicable cuando la manufactura no es meramente incidental a las ventas al por menor. *Walling* v. *West Kentucky Coal Co.*, 60 F. Supp. 681. Cuando un patrono hace funcionar una fábrica y un establecimiento de ventas al por menor

al mismo tiempo, los empleados que se dediquen a las ventas al por menor pueden estar exentos bajo la Ley federal de Normas Razonables del Trabajo al mismo tiempo que los empleados de la parte del negocio que se refiere a la fábrica no estarían exentos, recibiendo, por lo tanto, ambas clases de empleados un trato distinto bajo la ley. *Fletcher* v. *Grinnel Bros.*, 62 F. Supp. 258; *Prescription House* v. *Anderson*, 42 F. Supp. 874; *Phillips* v. *Walling*, supra. El negocio de fabricación de hielo envuelto en este caso debe caer bajo la categoría ya señalada en que la fabricación es incidental a la venta y, por lo tanto, los trabajadores a que se refiere este caso deben ser considerados como empleados que se dedican a las ventas al por menor. Véase además el caso de *Gustafson* v. *Fred Wolferman, Inc.*, 73 F. Supp. 186. Por lo menos la definición del negocio de ventas al por menor publicada debidamente en los periódicos debe haber sido suficiente para llamar la atención del apelante en este caso y haberlo puesto en guardia a los fines de que hubiese hecho la investigación correspondiente en cuanto al significado del decreto y así haberse protegido debidamente. Pike & Fisher, *Digest of Administrative Law*, Vol. 1, pág. 72; McFarland & Vanderbilt, *Cases on Administrative Law*, pág. 641; Cf *Market Street R. Co.* v. *Railroad Comm'n*, 324 U.S. 548. Con respecto a notificaciones de audiencias en agencias administrativas, en *United States* v. *Wrightwood Dairy Co.*, 127 F.2d. 907, se resuelve que en cuanto a la validez de una notificación el criterio aplicable es si las cuestiones envueltas fueron claramente definidas, si el propósito de la audiencia era claro y si las partes comprendidas tenían conocimiento a base de la notificación en cuanto a las consideraciones generales envueltas. Se resuelve que no es necesario que exista una identidad literal entre el contenido de la notificación y el contenido de la orden que se expidió.

◼ Ya hemos visto en la sección 30 de la ya citada Ley núm. 8 aprobada en 5 de abril de 1941 que el término negocio incluye todo trabajo en sitios de cualquier clase donde se

realicen transacciones mercantiles. La venta de hielo implica una transacción mercantil y cae, por lo tanto, dentro de la definición de "negocio". También conviene señalar que bajo la sección 12 de la ya citada ley, tal como fué enmendada por la Ley número 9 aprobada en 20 de marzo de 1942, la Junta de Salario Mínimo tiene poderes para clasificar los trabajos de cualquier ocupación, negocio o industria de acuerdo con la naturaleza de los servicios y para aprobar salarios para distintas clases de trabajos. Ello implica la facultad para establecer diferencias entre distintas clases de empleados y, por lo tanto, para incluir distintas clases de empleados en distintos decretos.

Con respecto a la formación del comité que formuló las recomendaciones que culminaron en la aprobación del Decreto núm. 8 el hecho de que el negocio de fabricación y venta de hielo no estuviese representado en ese comité no implica de por sí que tal decreto no pueda ser válidamente aplicable a ese negocio. En primer término se avisó públicamente a todas las personas interesadas que sometieran candidatos para la formación de tal comité y, como hemos visto, en ese aviso se adelantó la definición del negocio a ser cubierto. Los fabricantes y vendedores de hielo tuvieron así la oportunidad de someter candidatos, al enterarse que tal definición era lógicamente aplicable a los trabajadores de negocios de hielo que se dedicasen a la venta de hielo directamente a los consumidores. En segundo término, el requisito de notificación y de oportunidad de ser oído no es necesariamente aplicable a la etapa del procedimiento que se refiere a las actuaciones del comité. *Opp Cotton Mills* v. *Administrator*, supra. Además, en *Walling* v. *American Needlecrafts*, 139 F.2d. 60, se resuelve que la alegación al efecto de que ciertos códigos industriales fijando salarios no se aplican a ciertas clases de empleados porque un representante de una industria específica no fué designado para formar parte de un comité, carece de méritos, ya que no es

conveniente ni es posible en la reglamentación de la industria, generalmente considerada, el conceder representación a cada rama especializada de la industria. Véase además *Andree & Seedman, Inc.* v. *Administrator, etc.*, 122 F.2d 634.

 Debemos señalar que si una determinación administrativa, como el decreto envuelto en este caso, afecta o es aplicable a un patrono, este último debe seguir el procedimiento establecido en la ley para obtener una revisión judicial de esa determinación administrativa. Ese remedio de revisión judicial en cuanto a la validez y en cuanto a los alcances del dictamen o del decreto administrativo es de tal forma exclusivo que de no seguirse ese procedimiento de revisión judicial el patrono debe estar impedido de atacar o de impugnar el decreto en una acción independiente entablada contra el patrono para hacer efectivo ese decreto o ese dictamen. *Yakus* v. *United States*, 321 U.S. 414, 427, 433, 434; *Lockerty* v. *Phillips*, 319 U.S. 182; *Bowles* v. *Willingham*, supra, a la página 516. Refiriéndose específicamente a órdenes de salario mínimo, en el caso de *Walling* v. *Cohen*, supra, se resuelve que los demandados no habían solicitado la revisión judicial de la orden fijando los salarios y que, por lo tanto, no podían cuestionar en otro procedimiento independiente la validez de dicha orden. En este último caso el administrador no notificó a los demandados que ellos estaban sujetos a la orden y ellos todavía tenían tiempo para solicitar la revisión judicial. Por lo tanto, este último caso no es directamente aplicable al de autos. Sin embargo, queda en pie la doctrina general establecida en los casos de *Yakus* v. *United States*, supra, y *Bowles* v. *Willingham*, supra. Véanse además los casos de *Caguas Bus Line, Inc.* v. *Sierra, Comisionado*, ante pág. 743 y *Sierra, Comisionado* v. *South Porto Rico Sugar Co.*, ante pág. 157.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente Señor Todd, Jr., no intervino.

El Juez Asociado Señor Sifre concurre con el resultado.